RECEIVED IN CLERK'S OFFICE
U.S.D.C. Atlanta

SEP 16 2003

LUTHER D. THOMAS, Clerk
By: _____ Deputy Clerk

ORIGINAL

FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

SEP 23 2003

LUTHER D. THOMAS, Clerk
By: _____ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. |
| | ) **1:03-CV-2789** |
| HI-TECH PHARMACEUTICALS, INC., | ) |
| NATIONAL UROLOGICAL GROUP, INC., | ) |
| NATIONAL INSTITUTE FOR CLINICAL | ) RLV |
| WEIGHT LOSS, INC., AMERICAN WEIGHT | ) |
| LOSS CLINIC, INC., UNITED METABOLIC | ) |
| RESEARCH CENTER, INC., corporations; | ) |
| and JARED R. WHEAT, an individual, | ) |
| Defendants. | ) |

## CONSENT DECREE OF PERMANENT INJUNCTION

WHEREAS plaintiff, United States of America, has filed its complaint for injunctive relief against Hi-Tech Pharmaceuticals, Inc., National Urological Group, Inc., National Institute for Clinical Weight Loss, Inc., American Weight Loss Clinic, Inc., and United Metabolic Research Center, Inc., corporations, and Jared R. Wheat, an individual, and the defendants have appeared and have consented to the entry of this Consent Decree of Permanent Injunction ("Decree") without contest and before any testimony has been taken, and the United States of America has consented to this Decree,

WHEREAS plaintiff has alleged that the defendants violate 21 U.S.C. § 331(a), by doing or causing the introduction or delivery for introduction into interstate commerce of drugs within the



meaning of 21 U.S.C. § 321(g)(1), that are misbranded within the meaning of 21 U.S.C. § 352(f)(1), and, in the case of Cyclovar, Sigra, Spontane ES, Stamina RX, Stamina RX for Women, Uroprin, and Vigor Rx, also misbranded within the meaning of 21 U.S.C. § 352(a),

WHEREAS plaintiff has alleged that the defendants violate 21 U.S.C. § 331(d), by doing or causing the introduction or delivery for introduction into interstate commerce of drugs that are new drugs within the meaning of 21 U.S.C. § 321(p), that are not approved, in violation of 21 U.S.C. § 355(a),

WHEREAS the defendants have not admitted liability as to the charges in the complaint and their consent to entry of this permanent injunction shall not be interpreted to constitute an admission by any of them that they have engaged in violations of any law or regulations,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that:

1. This Court has jurisdiction over the subject matter herein and has personal jurisdiction over all parties to this action.

2. The Complaint for Injunction states a cause of action against the defendants under the Federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 301 et seq.

3. The defendants and each and all of their officers, agents, representatives, employees, successors, assigns,

attorneys, and any and all persons in active concert or participation with any of them (including affiliates and "doing business as" entities) who have received actual notice of this Decree by personal service or otherwise, are hereby restrained and enjoined under the provisions of 21 U.S.C. § 332(a) from directly or indirectly doing or causing the introduction or delivery for introduction into interstate commerce of Cyclovar, Dioxadren, Vigor-RX, Zebutol, Uroprin, Sigra, Spontane-ES, Stamina Rx, Stamina Rx for Women, Thermo-Z, Dexalean, Lipodrene, and Thermalean, and any other article of drug or dietary supplement that is stored, processed, labeled, packed, or distributed by the defendants at any location, unless and until:

 A.(1) an approved new drug application filed pursuant to 21 U.S.C. § 355 is in effect for such drug product; or

 (2) an investigational new drug application filed pursuant to 21 U.S.C. § 355(i) and 21 C.F.R. Part 312 is in effect for such drug product and the drug product is distributed and used solely for the purpose of conducting clinical investigations in accordance with the investigational new drug application; or

 B. (1) Defendants retain, at defendants' expense, an independent person or persons (the "expert"), without personal, financial (other than the consulting agreement between the parties), or familial ties to the defendants or their immediate

families, who by reason of background, experience, education, and training, is qualified to inspect the defendants' facilities, product labeling, including promotional material and internet site information, adverse event reports, and complaints for all drugs and dietary supplements stored, processed, labeled, packed, or distributed by the defendants. Defendants shall notify FDA in writing of the identity of the expert as soon as they retain such expert;

(2) Defendants cause their expert to perform a comprehensive inspection of the defendants' facilities, product labeling, including promotional material and internet site information, adverse event reports and complaints. The expert shall determine whether the defendants have eliminated drug claims from their labeling, including promotional materials and internet information, so the products are no longer misbranded or unapproved new drugs, and whether the defendants are appropriately tracking and investigating adverse events and complaints related to the products they distribute;

(3) Defendants' expert certifies in writing to FDA that he or she has inspected the defendants' facilities, product labeling, including promotional material and internet site information, adverse event reports and complaints, that the defendants are not making drug claims for their products, and that the defendants are appropriately tracking and investigating

adverse events and complaints related to the products they distribute. As part of this certification, the expert shall include a full and complete detailed report of the results of his or her inspection;

(4) Defendants report to FDA in writing the actions they have taken to: (a) eliminate drug claims from their labeling, including promotional materials and internet site information, for their products; and (b) ensure that adverse event reports and complaints related to their products are being appropriately tracked and investigated. The defendants may submit an interim report under this subparagraph, which shall include the expert certification described in subparagraph (B)(3), in support of the immediate marketing of a priority product(s);

(5) Defendants reimburse FDA for the costs of inspections conducted by FDA since March 24, 2000, when the defendants received the first Warning Letter from FDA relating to the defendants' distribution of misbranded and unapproved new drug;

(6) Any other costs for which the defendants are responsible pursuant to this Decree and which have accrued are paid in full; and

(7) With reasonable promptness, but in any event within 45 business days, after receiving a report under subparagraph (B)(4), FDA shall either notify the defendants in writing that,

with respect to the products covered in the report being reviewed: (A) they appear to be in compliance with the requirements set forth in paragraph 3.B(1)-(6) of this Decree, or (B) they do not appear to be in compliance with the requirements set forth in paragraphs 3.B(1)-(6), along with the reasons for such appearance of noncompliance. If FDA does not respond to such a report within 45 business days, the defendants may, subject to paragraph 7, resume operations with respect to any product which was the subject of such report.

4. After the defendants have resumed operations pursuant to paragraph 3.B(7):

A. the defendants shall not directly or indirectly introduce or deliver for introduction into interstate commerce, or directly or indirectly cause the introduction or delivery for introduction into interstate commerce of, any misbranded or unapproved new drug;

B. the defendants shall not directly or indirectly introduce or deliver for introduction into interstate commerce, or directly or indirectly cause the introduction or delivery for introduction into interstate commerce of, any unsolicited sample of any drug or dietary supplement, unless such sample:

(1) is provided in child-resistant and tamper-evident packaging;

(2) is fully labeled in accordance with dietary supplement labeling requirements; and

(3) is accompanied by a postage paid response card or labeled with a conspicuous toll-free number permitting the consumer to opt out of receiving free product samples in the future;

C. the defendants shall not directly or indirectly introduce or deliver for introduction into commerce, or directly or indirectly cause the introduction or delivery for introduction into commerce of, any unsolicited sample of drug or dietary supplement, any component of which has been shipped in interstate commerce, unless such sample:

(1) is provided in child-resistant and tamper-evident packaging;

(2) is fully labeled in accordance with dietary supplement labeling requirements; and

(3) is accompanied by a postage paid response card or labeled with a conspicuous toll-free number permitting the consumer to opt out of receiving free product samples in the future.

5.  Within 15 calendar days after the entry of this Decree, defendants shall, under FDA's supervision:

A.  Initiate recalls of Cyclovar, Sigra, Spontane ES, Stamina Rx, Stamina Rx for Women, Uroprin, and Vigor Rx.

7

Defendants shall bear the costs of such recalls, including FDA's supervisory costs; and

B. Destroy all Cyclovar, Sigra, Spontane ES, Stamina Rx, Stamina Rx for Women, Uroprin, and Vigor Rx that is in defendants' possession, custody, or control, including all product recalled pursuant to paragraph 5.A. Defendants shall bear the costs of destruction, including FDA's supervisory costs. Defendants shall be responsible for ensuring that the destruction is carried out in a manner that complies with all applicable federal and state environmental laws, and any other applicable federal or state law. Nothing in paragraph 5 shall preclude FDA from ordering additional relief under paragraph 7 when the conditions of that paragraph are met.

6. Representatives of FDA shall be permitted, without prior notice and as and when FDA deems necessary, to make inspections of the defendants' facilities in the United States or manufacturing product intended for sale in the United States, and take any other reasonable measures necessary to monitor and ensure continuing compliance with the terms of this Decree. During such inspections, FDA investigators shall be permitted access to all equipment, finished and unfinished drugs and dietary supplements, and all labeling, including promotional materials and internet site information; to take photographs and make video recordings; to take samples of the defendants'

finished and unfinished materials and products, containers, and labeling; and to examine and copy all records relating to product formulation, adverse reactions, complaints, and the receipt, processing, labeling, packing, manufacture, and distribution of any product. Such materials shall be subject to normal statutory protections against public disclosure of confidential commercial information. Such inspections shall be permitted upon presentation of a copy of this Decree and appropriate credentials. The inspection authority granted by this Decree is apart from, and in addition to, the authority to conduct inspections under 21 U.S.C. § 374.

7. If, at any time after this Decree has been entered, FDA determines, based on the results of an inspection, the analysis of samples, a report or data prepared or submitted by the defendants, the expert, or the auditor, or any other information, that additional corrective actions are necessary to achieve compliance with the FDCA or this Decree, FDA may, as and when it deems necessary, order the defendants in writing to take appropriate action, including, but not limited to, one or more of the following:

A. Cease processing, labeling, packing, and/or distributing any product(s);

B. Revise, modify, or expand any report(s) or plan(s) prepared pursuant to this Decree;

C.  Submit additional reports or information to FDA;

D.  Recall specified products released or distributed by defendants. Defendants shall bear the costs of such recall(s); or

E.  Take any other corrective action(s) as FDA, in its discretion, deems necessary to bring the defendants into compliance with the FDCA or this Decree.

8.  Any cessation of operations as described above shall continue until FDA notifies the defendants in writing that they appear to be in compliance with the FDCA and this Decree, and that they may, therefore, resume operations. Such FDA notification shall occur promptly upon defendants' compliance with any order described above, and shall not be unreasonably delayed.

9.  No dietary supplement subject to this Decree shall be deemed a misbranded or an unapproved new drug solely due to the use of the trade names Cyclovar, Dexalean, Dioxadren, Lipodrene, Sigra, Spontane ES, Stamina Rx, Stamina Rx for Women, Thermalean, Thermo-Z, Uroprin, Vigor Rx, or Zebutol.

10.  With respect to any labels or labeling incorporating a trade name with the term "Rx," such product shall be accompanied by a prominent and conspicuous statement "Dietary Supplement" in immediate proximity to the trade name.

11. Within thirty (30) calendar days of resumption of operations pursuant to paragraph 3.B(7) above, the defendants shall retain an independent person or persons (the "auditor"), without personal, financial (other than the consulting agreement between the parties), or familial ties to the defendants or their immediate families, who by reason of background, experience, education, and training, is qualified to assess the defendants' compliance with the FDCA and to conduct audit inspections of their operations. The auditor shall conduct these inspections at least twice a year for a period of 2 years. If the defendants choose, the auditor may be the same person retained pursuant to paragraph 3.B.

12. At the conclusion of each audit inspection, the auditor shall prepare a written audit report analyzing whether the defendants are in compliance with this Decree and the FDCA. Beginning with the second audit report, the auditor shall assess the adequacy of any actions taken by the defendants to correct all previously observed deviations, and include this information in the audit report. The audit reports shall be delivered contemporaneously to the defendants and FDA by courier service or overnight delivery service, no later than 15 calendar days after the date the inspections are completed. In addition, the defendants shall maintain the audit reports in a separate file at

their facility and shall make the audit reports available to FDA upon request.

13. Defendants shall provide a copy of this Decree, by personal service or registered mail, within 10 calendar days of its entry, to each of their officers, agents, representatives, employees, successors, assigns, attorneys, and any and all persons in active concert or participation with any of them (including affiliates and "doing business as" entities). Defendants shall provide an affidavit of compliance, signed by a person with personal knowledge of the facts, stating the fact and manner of compliance with the first sentence of this paragraph, and identifying the names and positions of all persons so notified, to FDA within 30 calendar days after the date of the entry of this Decree.

14. Defendants shall notify FDA at least 15 calendar days before any change in ownership or character of their business, such as dissolution, assignment, or sale, which change results in the emergence of a successor corporation, the creation or dissolution of subsidiaries or related corporations, or any other alteration in the corporate structure of the named defendants, or the sale or assignment of any business assets, such as offices or inventory, that may affect compliance with this Decree. Defendants shall provide a copy of this Decree to any successor or assign at least 15 calendar days prior to any sale or

assignment, and shall take the measures necessary to ensure that the successor or assign knows that it shall be fully bound by the terms of this Decree. Defendants shall furnish FDA with an affidavit of compliance with this paragraph no later than 10 calendar days prior to such assignment or change in ownership.

15. Defendants shall reimburse FDA for the costs of all FDA inspections, investigations, supervision, reviews, examinations, and analysis conducted pursuant to this Decree at the standard rates prevailing at the time the activities are accomplished. As of the date of this Decree, these rates are: $67.17 per hour and any fraction thereof per representative for inspectional work; $80.49 per hour and any fraction thereof per representative for laboratory and analytical work; 36 cents per mile for travel expenses; and $154.00 per day for subsistence expenses where necessary. In the event that the standard rates generally applicable to FDA supervision of court-ordered compliance are modified, these rates shall be increased or decreased without further order of the Court.

16. All notifications, certifications, reports, correspondence, and other communications to FDA required by this Decree shall be addressed to the Director, Atlanta District Office, FDA, 60 Eighth Street N.E., Atlanta, Georgia 30309.

17. The decisions of FDA under this Decree shall be final, and shall be reviewed by the Court, if necessary, under the

arbitrary and capricious standard. 5 U.S.C. § 706(2)(A). Review by the Court of any FDA decision rendered pursuant to this Decree shall be conducted without discovery by either party and shall be based exclusively on the written record before FDA at the time the decision was made.

18. If FDA has not notified the defendants of any violations under this Decree for a period of five (5) years, the defendants may petition this Court for an order dissolving the Decree and FDA will not object.

19. If the defendants violate this Decree and are found in civil or criminal contempt thereof, the defendants shall, in addition to other remedies, pay attorney fees, travel expenses incurred by attorneys and witnesses, court costs, expert witness fees, and investigational and analytical expenses incurred by the government in bringing such action.

20. This Court retains jurisdiction of this action for the purpose of enforcing or modifying this Decree and for the purpose of granting such additional relief as may be necessary or appropriate.

21. Plaintiff, the United States of America, shall have and recover from the defendants the costs of this action.

22. Defendants shall bear their own costs, including attorney fees, for compliance with this Decree in addition to any costs expressly provided herein.

FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

SEP 23 2003

LUTHER D. THOMAS, Clerk
By_____ Deputy Clerk

23. This consent decree resolves only those claims set forth in the Complaint in this action, and no other civil, criminal, or administrative claims that the government may have against the defendants herein.

SO ORDERED:

DATED this 22nd day of SEPT., 2003.

_____
UNITED STATES DISTRICT JUDGE

We hereby consent to the entry of the foregoing Decree:

FOR DEFENDANTS:

*/s/ Jared R. Wheat*
JARED R. WHEAT
President
Hi-Tech Pharmaceuticals, Inc.

*/s/ Timothy M. Fulmer*
TIMOTHY M. FULMER
Attorney for JARED R. WHEAT

*/s/ Timothy M. Fulmer*
TIMOTHY M. FULMER
Attorney for Defendant
HI-TECH PHARMACEUTICALS, INC.

*/s/ Timothy M. Fulmer*
TIMOTHY M. FULMER
Attorney for Defendant
NATIONAL UROLOGICAL GROUP, INC.

*/s/ Timothy M. Fulmer*
TIMOTHY M. FULMER
Attorney for Defendant
NATIONAL INSTITUTE FOR CLINICAL WEIGHT LOSS, INC.

*/s/ Timothy M. Fulmer*
TIMOTHY M. FULMER
Attorney for Defendant
AMERICAN WEIGHT LOSS CLINIC, INC.

*/s/ Timothy M. Fulmer*
TIMOTHY M. FULMER
Attorney for Defendant
UNITED METABOLIC RESEARCH CENTER, INC.

FOR THE GOVERNMENT:

WILLIAM S. DUFFEY, JR.
United States Attorney

*/s/ Laura S. Kennedy*
Assistant U.S. Attorney
600 U.S. Courthouse
75 Spring Street, S.W.
Atlanta, Georgia 30303-3309
Telephone:
facsimile:

*/s/ Gerald C. Kell*
GERALD C. KELL
Senior Trial Counsel
Office of Consumer Litigation
Department of Justice
P.O. Box 386
Washington, DC 20044
Telephone: (202) 514-1586
Facsimile: (202) 514-8742


OF COUNSEL:

ALEX M. AZAR II
General Counsel
Department of Health and Human Services

DANIEL E. TROY
Chief Counsel
Food and Drug Administration

BARBARA J. ALKALAY
Associate Chief Counsel
Food and Drug Administration
Rockville, Maryland 20857
Telephone: (301) 827-9106
Facsimile: (301) 827-0973